**Crystal L. NICHOLS, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, a Stock Insurance Company and a Maine corporation, Defendant.**

**No. C 03–00228 CRB.**

United States District Court,
N.D. California.

Oct. 10, 2003.

Geri Anne Johnson, The Harland Law Firm LLP, Eureka, CA, for Plaintiff.

Anna M. Martin, Joseph M. Rimac, William Reilly, Rimac & Martin, Erin Hurley, Rimac & Martin, P.C., San Francisco, CA, for Defendant.

## MEMORANDUM AND ORDER

BREYER, District Judge.

In this ERISA lawsuit plaintiff brings suit to recover plan death benefits and prejudgment interest from defendant. After defendant filed an interpleader, plaintiff stipulated to release defendant from all liability, excluding plaintiff's claim for interest. Now before the Court is plaintiff's motion for summary judgment on the issue of prejudgment interest. After carefully considering the papers filed by the parties, the Court concludes that oral argument is unnecessary, see Local Rule 7–1(b), and GRANTS plaintiff's motion in part. Plaintiff is entitled to prejudgment interest in the amount of $10,132.81.

## BACKGROUND

Decedent Larry Nichols worked for Pacific Lumber Company, a subsidiary of Maxxam, Inc. Maxxam offered its employees a Group Accidental Death insurance policy ("the Policy") through UNUM Life Insurance Company of America ("UNUM"). The Policy provided benefits in the event of the accidental death of the policy holder. Decedent, an eligible Maxxam employee, was covered by the Policy. The Policy provided decedent with $132,704.00 of coverage, and named dece-

dent's wife, Crystal Nichols, as the beneficiary.

On or about October 29, 2000 Larry Nichols died from a gunshot wound to the head in Trinity County.[1] The Nichols family members at the scene maintained that decedent had accidentally shot himself while out hunting. Upon arrival to the scene, police discovered that decedent's brother had moved the body. After the coroner determined that decedent died from a gun shot wound to the back of the head, the police ruled out the possibility of a suicide, and treated the case as a homicide. It is undisputed that plaintiff Crystal Nichols, decedent's wife, was in Humboldt County at the time of the incident.

Search warrants were issued to search the residences of plaintiff's son, niece, and brother-in-law. The record does not show that authorities found anything, or that they subsequently brought any action against any of the individuals in question.

Plaintiff Crystal Nichols filed an Accidental Death and Dismemberment claim with UNUM in January of 2001. UNUM engaged in routine investigation, and sought to confirm, among other things, that the death was not a suicide. In investigating the claim, UNUM sought information from the coroner, the Trinity County Sheriff's Department ("Sheriff's Department"), and the Department of Justice. Throughout its investigation, UNUM wrote Crystal Nichols five letters, informing her that it was awaiting information from the Sheriff's Department.

On July 2, 2001, the Sheriff's Department informed UNUM that it was investigating the incident as a homicide, and that it could not rule out the plaintiff's involvement. On July 9, 2001, UNUM informed plaintiff's attorney that the claim could not

be paid because the Sheriff's Department was investigating the matter as a homicide, and that it had not ruled out the plaintiff as a suspect.

From July to November, UNUM kept in continual contact with the Sheriff's Department in an effort to determine whether it had ruled out the plaintiff as a suspect. During that time, UNUM also made diligent efforts to keep the plaintiff updated on the progress of its investigation. On November 30, 2001, UNUM wrote the plaintiff and informed her that it was closing the claim, pending the completion of the Sheriff's Department's investigation and/or its representation that plaintiff was ruled out as a suspect.

In October of 2002, Nichols offered the defendant evidence purporting to rule out her son as a suspect. UNUM again contacted the Sheriff's Department. On November 4, 2002, the Sheriff's Department informed defendant that the case was still open, and that it had not ruled out any member of the family. Defendant informed Nichols that the case was still open. UNUM also notified the plaintiff that it intended to interplead the funds.

On December 16, 2002, Nichols brought suit in state court to recover the proceeds under the Policy and to recover prejudgment interest. UNUM counter-claimed by filing an interpleader and removed the action to this Court. On February 6, 2003, UNUM deposited $132,704.00 with the Court—the proceeds due under the policy. On July 24, 2003, plaintiff stipulated to discharging UNUM from the action, with the exception of her claim for interest due on the $132,704.00. On August 1, 2003, Nichols filed for summary judgment on the sole issue of prejudgment interest, and defendant replied on August 29, 2003.

---

1. This date is disputed by the record. Plaintiff claims that the death occurred on October 29, 2000 while the defendants maintain that it occurred on November 29, 2000. The disagreement is immaterial for the purposes of this order.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on the file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

Plaintiff's summary judgment motion seeks $16,74.53 in prejudgment interest on the proceeds due under the Policy, from the date death benefits first became payable through the date of judgment. Plaintiff maintains that the death benefits first became payable on January 17, 2001—when plaintiff provided UNUM with decedent's legal death certificate. Plaintiff's calculations are based on the federal adjusted prime rate. Plaintiff bases its motion on the ground that awarding prejudgment interest is within the discretion of the district court.

UNUM maintains that Nichols is not entitled to any prejudgment interest for three reasons. First, prejudgment interest may not be awarded after the defendant interpleaded the Policy proceeds. Second, while a district court has discretion to award post-lawsuit prejudgment interest, plaintiff is not entitled to such interest under the so-called "Hummel factors." *See Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980) (presenting a five factor test to determine whether a court should award fees and costs). Third, plaintiff is not entitled to receive pre-lawsuit interest on ERISA benefits under federal law, and the plan does not provide for such interest.

## A. PREJUDGMENT INTEREST AFTER THE FUNDS WERE INTERPLEADED

■ Plaintiff seeks prejudgment interest from January 17, 2001 *through the date of judgment.* It is well accepted that "the interpleading party bears no liability for interest on the interpleaded fund after the date that he pays the interpleaded fund into the court." *See Fidelity Bank v. Commonwealth Marine & General Assur. Co.,* 592 F.Supp. 513, 524 (E.D.Pa.1984) (citation omitted); *see also Provident Indem. Life Ins. Co. v. Durbin,* 541 F.Supp. 4, 9 n. 4 (D.C.Pa.1981) ("An insurer in an interpleader action cannot be held liable for prejudgment interest after the date of deposit of the insurance proceeds with the court"); *New York Life Ins. Co. v. Cooper,* 76 F.Supp. 976, 979 (S.D.N.Y.1944) (plaintiff is not liable for interest after depositing interpleaded funds with the court).

The record demonstrates that UNUM deposited the policy proceeds with the Court on February 6, 2003. Prejudgment interest ceased to accrue on that date.

## B. POST–LAWSUIT PREJUDGMENT INTEREST

■ Both parties correctly agree that the trial court has discretion to award post-lawsuit prejudgment interest.

"ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court." *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1030 (4th Cir.1993). Whether a trial court will grant prejudgment interest " 'is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.' " *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan,* 750 F.2d 1458, 1465 (9th Cir.1985) (citing *Wessel v. Buhler,* 437 F.2d 279, 284 (9th Cir.1971)).

UNUM maintains that Nichols is not entitled to post-lawsuit prejudgment interest because she has failed to meet the five-factor test set out in *Hummell,* 634 F.2d at 453.[2] However, defendant erroneously cites *Hummell* as the appropriate authority. In following the Fifth and Tenth Circuits, the *Hummell* court adopted a five factor test to serve as a guideline when awarding *fees and costs,* not prejudgment interest. *See id.* The appropriate test for awarding prejudgment interest remains " 'a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.' " *Shaw,* 750 F.2d at 1465 (citation omitted). Accordingly, the district court may exercise "its discretion to award prejudgment interest in order to compensate [the plaintiff] for the loss of the use of his funds." *Quesinberry,* 987 F.2d at 1030–31.

■ This Court finds that fairness requires awarding plaintiff post-lawsuit prejudgment interest. According to defendant, UNUM notified the plaintiff of its intent to interplead the proceeds on November 14, 2002. Defendant's Response

Brief to Plaintiff's Reply Re the Request for Prejudgment Interest at 4, *Nichols* (No. 03–228). Over one month later, on December 16, 2002, when Nichols brought suit to recover the proceeds, defendant still had not interpleaded the funds. In fact, defendant did not interplead those funds until February 6, 2003, nearly two months after plaintiff brought her suit. Defendant has not offered any reasons for this three month delay. Furthermore, the defendant has failed to produce any evidence that this claim for prejudgment interest "could injure other beneficiaries of its pension plan" by creating a financial strain. *Shaw,* 750 F.2d at 1465. In short, defendant has not explained why granting post-lawsuit prejudgment interest would be unfair.

Plaintiff Nichols, on the other hand, maintains that her husband was the sole wage earner in the family, and that she had to support her two minor children after decedent's death. *See* Plaintiff's Reply Brief in Support of Motion for Summary Judgment at 1, *Nichols* (No. 03–228). Having expressed intent to interplead the funds one month before plaintiff brought this action, UNUM withheld the funds for nearly two months after Nichols brought her suit. Withholding these funds amounted to an unjust enrichment. It is unclear why the defendant took nearly three months to interplead the proceeds of the Policy, but it is clear that the defendant deprived the plaintiff of the use of those proceeds. Thus this Court grants post-lawsuit prejudgment interest "in order to compensate [plaintiff] for the loss of the use of [her] funds." *Quesinberry,* 987 F.2d at 1030–31.

---

**2.** These factors include: (1) the degree of opposing parties culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances;

(4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

## C. PRE–LAWSUIT PREJUDGMENT INTEREST

Plaintiff alleges that she should receive prejudgment interest from the first date that benefits became payable—the date plaintiff provided defendant with decedent's legal death certificate. *See Yarde v. Pan American Life Ins. Co.*, 840 F.Supp. 406, 413 (D.S.C.1994) (*rev'd in part on other grounds*, 67 F.3d 298, 1995 WL 539736 (4th Cir.1995)); *see also Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268, 271 (6th Cir.1990) (holding insurance company was liable for prejudgment interest from the first day benefits first became payable—when the insurance company received due proof of death); *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 82–83 (9th Cir.1982) (successful claimant should have been awarded prejudgment interest from the date the death benefits first became due and owing).

Defendant contends that pre-lawsuit interest is not allowed in ERISA actions under federal law, absent a provision in the plan to the contrary. *See Flint v. ABB Inc.*, 337 F.3d 1326, 1329 (11th Cir. 2003) (holding ERISA participant could not recover interest on benefits which were terminated and later retroactively reinstated, unless the plan in question provided such a provision); *see also Clair v. Harris Trust & Sav. Bank*, 190 F.3d 495, 497 (7th Cir.1999) (holding pre-claim interest in ERISA cases is not recoverable on benefits wrongfully delayed unless the plan provides such a provision).

Contrary to the Seventh and Eleventh Circuits, the Ninth Circuit has upheld the award of pre-lawsuit prejudgment interest in ERISA cases. In *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79 (9th Cir. 1982), plaintiff-appellant Gelfgren brought suit in California state court against Republic National Life Insurance Company ("Republic") to recover $30,000 in death benefits, as a result of the death of his father. *Id.* at 80. Republic removed the case to federal court under ERISA, 29 U.S.C. § 1132(a)(1)(B), and cross-claimed in interpleader. *Id.* Republic then deposited the policy proceeds with the court.

On appeal, the Ninth Circuit noted that an award of prejudgment interest depends on equitable considerations. *Id.* at 82. Some factors courts have looked at in determining whether interest should be awarded are: (1) "whether the stakeholder unreasonably delayed in instituting the action or depositing the fund with the court;" (2) "whether the stakeholder used the fund for his benefit and would be unjustly enriched at the expense of the claimants who have claim to the fund;" and (3) "whether the stakeholder eventually deposited the fund into the court's registry." *Id.*

Applying these factors, the *Gelfgren* court concluded that the trial court had erred in denying pre-lawsuit prejudgment interest. *Id.* First, the court noted that two years had passed between the death of the insured and the time that Republic interpleaded the funds. *Id.* Republic had full use of the fund and earned interest on it during that period. *Id.* Further, although Republic suggested interpleading the policy proceeds earlier, it only interpleaded the funds after a suit was brought against it. *Id.* Finally, the court stated, Republic would not be prejudiced by an award of pre-lawsuit prejudgment interest because it had no claim to the fund and earned interest on it—thus it would be unjustly enriched. *Id.* The court concluded that prejudgment interest should be awarded "from the date that the death benefit first became due and owing." [3] *Id.*

---

**3.** In allowing pre-lawsuit prejudgment interest in the ERISA context, the Ninth Circuit is in accord with the Fourth Circuit (*Quesinberry*, 987 F.2d at 1030–31), the Sixth Circuit

(*Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268, 271–272 (6th Cir.1990)), and the

at 83.

In the instant case, this Court finds that it has the authority, under binding precedent, to award pre-lawsuit prejudgment interest. Awarding prejudgment interest in the ERISA context is a " 'question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.' " *Shaw,* 750 F.2d at 1465 (citation omitted); *see also Gelfgren,* 680 F.2d at 82.

Plaintiff seeks prejudgment interest from the date that decedent's legal death certificate was furnished. Such an award would not be fair; instead, for the reasons below, this Court finds that prejudgment interest should be granted from July 2, 2001.

After receiving decedent's legal death certificate, UNUM engaged in a routine and reasonable investigation in order to determine whether decedent's death was a suicide. While investigating, defendant discovered certain facts that raised concern regarding plaintiff's possible involvement with decedent's death. It was reasonable for defendant to further investigate the matter.

From January 17, 2001 to July 2, 2001, defendant diligently pursued its investigation, and repeatedly contacted the Sheriff's Department, the Coroner, and the Department of Justice. According to defendant, on July 2, 2001, the Sheriff's Department finally notified the defendant that plaintiff's involvement in the homicide was not ruled out. Thus, after approximately five-and-a-half months, defendant discovered that the police investigation remained inconclusive, and no clear end was in sight. Defendant did not interplead the policy proceeds at that point. In fact, it did not do so for nineteen months after that report. During those nineteen months, the authorities brought no charges against

plaintiff, or any member of her family. The record does not indicate that the authorities ever planned to do so.

Fearing multiple liability, UNUM withheld the funds for nineteen months, awaiting conclusive results from the Sheriff's Department. Defendant maintains that it did not have any interest in the policy proceeds, and simply intended to protect itself from multiple liability. However, if such was the intent, defendant fails to explain why it did not interplead the policy proceeds on July 2, 2001, upon discovering that it could be open to multiple liability. An interpleader action would have protected defendant from multiple liability immediately, and prevented prejudgment interest from accruing. In fact, defendant correctly cited *Fidelity Bank* in support of this principle. Thus it is unclear why defendant had to keep the policy proceeds in order to protect itself.

Additionally, similar to Republic Life Insurance Company in *Gelfgren,* UNUM failed to file an interpleader for approximately nineteen months. This was an unreasonable period. During that period, UNUM had "full use of the fund and earned interest on it." *Gelfgren,* 680 F.2d at 82. Not only did UNUM benefit by withholding the policy proceeds for approximately nineteen months, but it simultaneously deprived the plaintiff of the same benefit.

> "To allow the [defendant] to retain the interest it earned on funds wrongfully withheld from a beneficiary would be to approve of an unjust enrichment. Further, the relief granted would fall short of making the beneficiary whole because he has been denied the use of money which was his."

*Sweet,* 913 F.2d at 270 (citation omitted).

Defendant's original investigation was reasonable under these circumstances.

Eighth Circuit (*Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208 (8th Cir.1981)).

However, defendant has not explained why it did not interplead the policy proceeds after the conclusion of its reasonable investigation. Even after UNUM claimed it would interplead the funds, it took three months to do so. Further, UNUM "only sought interpleader after suit was instituted against [it]" *Gelfgren*, 680 F.2d at 82. Moreover, defendant has not explained why an award of prejudgment interest would be unfair. Finally, defendant has failed to produce any evidence that this claim for prejudgment interest "could injure other beneficiaries of its pension plan" by creating a financial strain. *Shaw*, 750 F.2d at 1465. UNUM would not be prejudiced by the award of pre-lawsuit prejudgment interest "since, though they [had] no claim to the fund, they have earned interest on it … and thus would be unjustly enriched." *Gelfgren*, 680 F.2d. at 82.

Failure to award prejudgment interest in such a situation " 'would approve of an unjust enrichment.' " *Sweet*, 913 F.2d at 270 (citation omitted). Further, if the Court does not award prejudgment interest, " 'the relief granted would fall short of making the beneficiary whole.' " *Id.*

### CONCLUSION

Plaintiff's motion for summary judgment is granted in part. Plaintiff is awarded prejudgment interest from July 2, 2001 [4] until February 6, 2003 [5] at the federal adjusted prime rate, in the amount of $10,132.81.[6]

**IT IS SO ORDERED.**

---

4. After defendant UNUM had an opportunity to conduct a reasonable investigation.

5. When defendant deposited the interpleaded funds into this court.

6. Calculations:

| | |
|---|---|
| July 2, 2001 to July 1, 2002 | $ 6356.52 |
| July 2, 2002 to February 1, 2003 7 months @ $529.71/mo. | $ 3707.97 |
| February 2, 2003 to February 6, 2003 4 days @ 17.08/day | $ 68.32 |
| Total | $10,132.81 |