NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. NV-11-1549-PaJuH |
| | ) |
| AMERICAN WAGERING, INC., | ) Bankr. No. 03-52529-GWZ |
| | ) |
| Debtor. | ) Adv. Proc. 05-05037-GWZ |
| _____ | ) |
| | ) |
| MICHAEL RACUSIN, dba M. RACUSIN & COMPANY, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| AMERICAN WAGERING, INC.; LEROY'S HORSE & SPORTS PLACE, | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on July 20, 2012,
at Pasadena, California

Filed - August 1, 2012

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Gregg W. Zive, Bankruptcy Judge, Presiding

_____

Appearances:     Samuel A. Schwartz, Esq. argued for appellant Michael Racusin; Matthew C. Zirzow, Esq. of Gordon & Silver, Ltd. argued for appellees American Wagering, Inc. and Leroy's Horse and Sports Place.

_____

Before: PAPPAS, JURY and HOLLOWELL, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Michael Racusin appeals the bankruptcy court's grant of partial summary judgment to chapter 11[2] debtors American Wagering, Inc. ("AWI") and Leroy's Horse and Sports Place ("Leroy's"). We AFFIRM.

## I. FACTS

### The Pre-bankruptcy Litigation

In 1994, Leroy's, a company which provides facilities within Nevada casinos where bets may be placed on horse racing events, was preparing an initial public offering ("IPO") of its stock. In contemplation of the IPO, Leroy's formed and became a subsidiary of AWI, which would be the publicly owned entity after the IPO.[3] AWI hired Racusin as its financial advisor in connection with the IPO. AWI and Racusin entered into an agreement on November 11, 1994, that provided in relevant part:

> Michael Racusin has been our financial advisor for the purpose of an initial public offering by Rodman and Renshaw, Inc., Equity Securities Trading Co., Inc., or Orida Capital International, Ltd. As compensation he would be paid 4½% of the final evaluation in the form of Leroy's common stock and $150,000 cash upon completion of common offering or IPO.

Quoted in Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.), 493 F.3d 1067, 1069 (9th Cir. 2006).

Two years later, in 1996, while the IPO was pending, AWI sued

_____

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, as enacted and promulgated prior to the effective date (October 17, 2005) of the relevant provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, April 20, 2005, 119 Stat. 23, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] Because the corporate relationship of Leroy's and AWI is not relevant in this appeal, we will refer to both debtors as AWI.

-2-

Racusin in Nevada state court, seeking a determination that the November 11, 1994 agreement between AWI and Racusin was unenforceable. Racusin removed the action to the U.S. District Court for the District of Nevada and asserted a counterclaim for breach of contract and other relief. In September 1997, after a bench trial, the district court entered judgment in favor of Racusin against AWI for $732,972. Racusin appealed the judgment, arguing that he was entitled to a jury trial. The Ninth Circuit, agreeing with Racusin, reversed the district court's judgment and remanded. Leroy's Horse and Sports Place v. Racusin, 182 F.3d 926 (table) (9th Cir. 1999). On remand, a jury determined that Racusin was entitled to recover "stock in Leroy's . . . in an amount equal to 4.5% of $45,000,000 [the final valuation of the common stock] and $150,000 in cash." Based on the jury's finding, the district court awarded Racusin 337,500 shares of Leroy's stock. In re Am. Wagering, Inc., 493 F.3d at 1070.

Racusin appealed again, contending that the district court erred by awarding him stock when he had requested only monetary damages. The Ninth Circuit again held in Racusin's favor, and remanded the action to the district court with instructions that it calculate the value of 337,500 shares and enter a money award to Racusin. Leroy's Horse & Sports Place v. Racusin, 21 Fed. Appx. 716 (9th Cir. 2001). On remand, on July 8, 2003, the district court awarded Racusin money damages of $150,000 plus $2,160,000, representing the value of the stock when Racusin could have first legally sold his shares. Leroy's Horse and Sports Place v. Racusin, CV-S-95-00927 (D. Nev. 2003) (the "Initial Interest Judgment").

-3-

Shortly after entry of the Initial Interest Judgment, on July 25, 2003, AWI and Leroy's filed petitions for relief under chapter 11 of the Bankruptcy Code. However, before becoming too embroiled in the bankruptcy cases and the adversary proceeding giving rise to this appeal, Racusin filed one more appeal to the Ninth Circuit, objecting to the Initial Interest Judgment because it did not include prejudgment interest (the "Ninth Circuit Interest Appeal"). Racusin's unopposed motion for relief from the stay to pursue the Ninth Circuit Interest Appeal was granted on August 12, 2003.

**The Claim Subordination Litigation
and the Settlement Agreement**

Racusin filed a proof of claim in the bankruptcy case for $2,725,012 on October 14, 2003, which he indicated included the disputed prejudgment interest. He filed an amended proof of claim on March 26, 2004 for $1,328,764.17, "plus interest at the federal rate from July 8, 2003 until paid."

On August 5, 2003, AWI commenced adversary proceeding no. 03-5804 against Racusin. The complaint sought an order subordinating Racusin's creditor's claim under § 510(b) because, AWI argued, Racusin was a shareholder, not a creditor. Both parties moved for summary judgment. After a hearing, the bankruptcy court entered an Order Granting Motion for Summary Judgment on January 9, 2004, ruling in favor of Racusin, and rejecting AWI's request to subordinate Racusin's claim under § 510(b) (the "Subordination Order").

AWI appealed the Subordination Order to this Panel (the "BAP Appeal").

-4-

On September 3, 2004, AWI and Racusin entered into a settlement agreement resolving certain aspects of their disputes (the "Settlement Agreement"). After a hearing, the bankruptcy court approved the Settlement Agreement by order entered on October 24, 2004.

Several provisions of the Settlement Agreement are critical in this appeal. These include:

> [AWI agrees that] it will not appeal the decision in the BAP Appeal and will accept the BAP Appeal decision as final; Racusin shall retain the right to appeal the decision in the BAP Appeal. In the event Racusin appeals the BAP Appeal, the Amortization Schedules attached to this Agreement shall apply to any amounts due Racusin as a result of winning such appeal. The Parties agree that neither will appeal the decision of the [Ninth Circuit Interest Appeal], and they will accept the [Ninth Circuit Interest Appeal] decision as final.

Settlement Agreement, § III(4).

> In the event that Racusin wins the [Ninth Circuit Interest Appeal] and wins the BAP Appeal, then the Allowed Racusin Claim shall be the lesser of the amount awarded by the 9th Circuit or $2,800,000.00 less any amounts paid Hartunian pursuant to the Hartunian appeals as of the Effective Date of the Restated Amended Plan. The Allowed Racusin Claim shall be paid to Racusin in accordance with Amortization Schedule #2 (attached hereto and incorporated herein) in full satisfaction and release of the Allowed Racusin Claim. The balance shall bear interest at the rate of eight percent (8%) per year until paid in full and the initial payment shall be made on the Effective Date of the Restated Amended Plan.

Settlement Agreement, § III(7).

> In the event that Racusin wins the [Ninth Circuit Interest Appeal] and loses the BAP Appeal, then the Allowed Racusin Claim shall be 250,000 shares of AWI common stock in full satisfaction and release of the Racusin Claim.

Settlement Agreement, § III(8).

On January 14, 2005, the Court of Appeals decided the Ninth Circuit Interest Appeal in Racusin's favor and awarded Racusin

prejudgment interest, which it calculated as $1,383,036.15. Hartunian v. Racusin, 120 Fed. Appx. 698, 704 (9th Cir. 2005).[4] It is undisputed by the parties that Racusin "won" the Ninth Circuit Interest Appeal for purposes of the Settlement Agreement.

On February 28, 2005, the bankruptcy court confirmed AWI's unopposed Restated Amended Joint Plan of Reorganization (the "Plan"). The Plan's effective date was March 11, 2005. The Plan did not alter the parties' rights under the Settlement Agreement.

The Panel entered a decision in the BAP Appeal on April 14, 2005 (the "BAP Subordination Order"). Am. Wagering, Inc. v. Racusin (In re Am. Wagering, Inc.), 326 B.R. 449 (9th Cir. BAP 2005). The BAP reversed the bankruptcy court's Subordination Order, deciding that the Racusin Claim should be subordinated pursuant to § 510(b). While Racusin appealed the BAP Subordination Order to the Ninth Circuit (the "Ninth Circuit Subordination Appeal"), he never sought a stay of the BAP Subordination Order in the BAP or the Ninth Circuit.

**The Interpleader Action**

AWI filed a Complaint in Interpleader (the "Interpleader Action") in the bankruptcy court on May 13, 2005, commencing the adversary proceeding from which this appeal originates. AWI sought an order pursuant to Rule 7022 against Racusin and his attorneys Aram Hartunian ("Hartunian"), Vincent Schettler ("Schettler"), and Lionel Sawyer & Collins ("LS&C"), resolving their conflicting claims and liens asserted against the Racusin

---

[4] In addition to the prejudgment interest dispute, the Ninth Circuit in Hartunian also resolved a fee dispute between Racusin and one of his attorneys, Hartunian. That dispute is not relevant in this appeal.

-6-

Claim in the bankruptcy case. On June 16, 2005, Racusin moved to stay the Interpleader Action pending outcome of his appeal to the Ninth Circuit of the BAP Appeal (the "Interpleader Stay Motion"). AWI filed a motion on July 12, 2005 for an order allowing it to deposit 250,000 shares of AWI stock with the bankruptcy court clerk pursuant to Rule 7067 (the "Interpleader Motion"). AWI argued that § III(8) of the Settlement Agreement had been triggered by Racusin's victory in the Ninth Circuit Interest appeal and loss in the BAP Appeal, and that under the Settlement Agreement, AWI's tender of the 250,000 shares would satisfy the Racusin Claim in full.

The bankruptcy court held a hearing on the Interpleader Motion on July 27, 2005. Racusin did not object to AWI's request to interplead the stock, nor was the question raised at that time about Racusin's right to receive interest payments on the Racusin Claim while the stock was in the court registry. The court entered an order on the Interpleader Motion on August 2, 2005, that provided:

> IT IS HEREBY ORDERED that the American Wagering Common Stock Certificate No. AW 0262 shall be turned over to and deposited with the Clerk of the Court, subject to further order of the Court that in the event the BAP order is reversed on appeal, the stock shall be withdrawn and substituted with cash pursuant to the amortization schedule set forth in the Settlement Agreement and the Confirmed Plan.

AWI delivered the stock certificate to the clerk of the bankruptcy court on August 5, 2005.

A hearing on Racusin's Interpleader Stay Motion was held on August 24, 2005. There was no discussion in the pleadings or at the hearing regarding any interest payments to Racusin while the

action was pending. With no significant opposition to the motion voiced, the bankruptcy court entered its order granting Racusin's motion to stay the interpleader proceedings, pending the decision of the Ninth Circuit on appeal of the BAP Appeal, on August 31, 2005.

## The Ninth Circuit Subordination Judgment

The Ninth Circuit entered its first opinion concerning the BAP Subordination Order on October 6, 2006. Racusin v. Am. Wagering, Inc.(In re Am. Wagering, Inc.) 465 F.3d 1048 (9th Cir. 2006). It reversed the BAP Subordination Order, holding that Racusin was indeed a creditor of AWI, rather than an investor, and so his claim should not be subordinated in the bankruptcy case pursuant to § 510(b). After AWI requested rehearing, the October 6 opinion was withdrawn and superseded by an opinion filed June 28, 2007. Racusin v. Am. Wagering, Inc. (In re Am. Wagering, Inc.), 493 F.3d 1067 (9th Cir. 2007) (the "Ninth Circuit Subordination Judgment"). The superseding opinion did not alter the original decision's determination that Racusin's claim could not be subordinated.

On July 17, 2007, AWI filed its Motion for Return of Deposited Shares of Stock and to Authorize Deposit of Funds Pursuant to [Rule] 7067 (the "7067 Motion") in the Interpleader Action. Attached to the 7067 Motion was a revised amortization schedule detailing the payment of the Racusin Claim originally approved in the Plan (the "7067 Amortization"). Among its provisions, the 7067 Amortization specified that interest on the Racusin Claim would accrue at a rate of 8 percent per annum, beginning on the Plan's Effective Date of March 11, 2005 through

-8-

July 31, 2007. It is noteworthy that this time period would include the time from deposit of the stock in the court's registry (August 2, 2005) through entry of the Ninth Circuit Subordination Judgment on June 28, 2007 (the "Gap Period").

On July 18, 2007, Racusin filed a motion to enforce Settlement Agreement § III(7) under Rule 9019, based on the argument that both the Ninth Circuit Interest Appeal and the Ninth Circuit's reversal of the BAP Appeal had been decided in Racusin's favor (the "9019 Motion").

The bankruptcy court conducted a hearing on both the 7067 Motion and the 9019 Motion (and related matters) on November 2, 2007.[5] AWI was represented by counsel and Racusin appeared pro se. The court denied the 9019 Motion without prejudice, observing numerous legal and technical errors in the pleading. The court memorialized this ruling by order entered November 5, 2007 (the "Deposit Order").

In the Deposit Order, the court also denied the 7067 Motion because the Interpleader Order entered in 2005 had provided for replacement of the stock with cash if the Ninth Circuit reversed the BAP Subordination Order, and thus the 7067 Motion was unnecessary. However, the court accepted the 7067 Amortization schedule, and directed AWI to replace the stock in the registry with cash consistent with the 7067 Amortization schedule, and to continue payments into the registry consistent with that schedule. The 7067 Amortization schedule included interest in the Gap

---

[5] Up to this point, the Honorable Bert Goldwater had presided over this bankruptcy case and related adversary proceedings. From this point on, the case was assigned to the Honorable Gregg W. Zive.

Period. AWI deposited the sum required by the bankruptcy court in the registry and received the stock certificate back on November 6, 2007.

Then, on March 17, 2008, AWI submitted a corrected amortization schedule (the "Corrected Amortization"). The principal difference between the 7067 Amortization and the Corrected Amortization is that the latter commenced accruing interest on Racusin's Claim on July 26, 2007, that is, after the Gap Period.

Racusin filed a Counterclaim against AWI in the Interpleader Action on January 14, 2009. Racusin argued that AWI had breached the Settlement Agreement by failing to make payments to him according to the original 7067 Amortization schedule.

Racusin elaborated on this counterclaim in a Motion for Summary Judgment on February 24, 2009, generally arguing that AWI breached its payment obligations under the 7067 Amortization schedule when it sponsored the later Corrected Amortization schedule. According to Racusin, the Corrected Amortization began accruing interest on July 26, 2007, whereas the 7067 Amortization schedule included interest from 2005, including the Gap Period. Eliminating the Gap Period interest, as well as a dispute regarding the applicable interest rate, resulted in a shortfall in AWI's payments to the interpleader registry account.

AWI filed a response to the summary judgment motion on March 16, 2009, generally denying the allegations in the counterclaim. On March 30, 2009, Racusin filed his Reply to AWI's opposition, attaching an amended calculation of damages from AWI's alleged breach.

The bankruptcy court hearing on Racusin's summary judgment motion occurred on May 8, 2009. After arguments by counsel for the parties, the court announced its ruling on the record, granting Racusin's motion for summary judgment and accepting his calculation of damages which included interest during the GAP Period. The court entered its order granting partial summary judgment on August 18, 2009 (the "First Summary Judgment Order"). However, the court did not at that time certify the finality of the order under Civil Rule 54(b).

AWI sought relief from, or reconsideration of, the First Summary Judgment Order on January 25, 2010. AWI asked the court to employ its inherent powers, or to act under Civil Rule 54(b), to review the First Summary Judgment Order because it was not a final judgment. AWI further alleged that there were several errors in the judgment, including that Racusin had incorrectly formulated the beginning balance of the claim and that under law no interest may accrue on the stock it interpleaded.

At a hearing on AWI's motion for relief or reconsideration, on April 2, 2010, after hearing from counsel, the bankruptcy court recited findings of fact and conclusions of law on the record, which were later memorialized in written findings and conclusions entered on December 23, 2010. The court vacated its First Summary Judgment Order because, at the time of entry of that order, there were, among other disputes, several disputed material issues of fact: (1) the court had not made a determination of the intent of the parties whether interest accrued during the GAP Period; (2) the court was not prepared to make a determination of the correct interest rate, absent a counter-motion for summary

-11-

judgment from AWI.

AWI moved for summary judgment in the Interpleader Complaint on April 20, 2011. AWI argued that Racusin was not entitled to recover interest that accrued during the GAP Period. In its view, disallowance of interest in the GAP Period meant that AWI had satisfied its obligation to Racusin in full under the Settlement Agreement. Racusin responded on June 24, 2011. He disputed AWI's interpretation of the Settlement Agreement, again arguing that he had won both the Ninth Circuit Interest Appeal and the Ninth Circuit Subordination Judgment, and consequently, § III(7) of the Settlement Agreement, rather than § III(8), controlled his right to payment.

The hearing on AWI's summary judgment motion was held on July 27, 2011. After hearing from counsel, the court stated its findings and conclusions on the record, which were memorialized in the findings and partial summary judgment order entered on September 26, 2011. The findings include the following:

> I have read the settlement agreement. BAP appeal refers only to the appeal to the BAP and not to any subsequent appeal. And that is my finding of an undisputed fact as of this time, which is consistent with the arbitrator's finding 3. And it can be the -- so far as I can determine, the only possible interpretation based upon various provisions in the settlement agreement. So that's taken care of.

Hr'g Tr. 10:20-21, July 27, 2011. The court's comments were memorialized in its written findings of fact:

> The term "BAP Appeal" as used in the Settlement Agreement refers only to an appeal from the Bankruptcy Court's 510(b) decision before the BAP on that issue and not any further appeal of that issue or the BAP's decision to the Ninth Circuit. This interpretation of the Settlement Agreement is also consistent with the interpretation given in the Arbitration Award,

-12-

pp. 17-21.[6]

Finding of Fact 11, September 26, 2011. Other findings relevant in this appeal are:

> Article III, Paragraph 8 is one of the operative paragraphs in the Settlement Agreement because Racusin won the [Ninth Circuit Interest Appeal] but lost the BAP Appeal (as those terms are used in the Settlement Agreement). Racusin could not have made a demand for payment of cash prior to the Ninth Circuit Subordination Decision, however, because the Settlement Agreement did not provide for any cash payment during that time.

Finding of Fact 12.

> Racusin did not seek a stay of the decision [in the BAP Appeal] pending his appeal of this decision to the Ninth Circuit, and thus the BAP's decision was unstayed and effective.

Finding of Fact 13.

> The Debtors' Stock Deposit in the Court Registry was a tender of performance of their obligations under the Settlement Agreement and therefore interest does not accrue during the time the stock was on deposit. Interest also does not accrue during the time the stock was on deposit pursuant to the law of deposit per [Civil Rule 67], the law of interpleader, and as a matter of equity because Racusin sought and obtained the Stay Order.

---

[6] The arbitration award referred to by the court resulted from proceedings undertaken to resolve the dispute between Racusin and his attorneys, LS&C, regarding LS&C's lien asserted on the Racusin Claim for legal services. The arbitration proceedings extended over four years and required numerous hearings. A copy of the Arbitration Award was entered in the record of the adversary proceeding. The Arbitration Award specifically addressed whether interest was payable during the GAP Period and, consequently, whether a portion of that interest would be payable to LS&C. The arbitrators ruled that the Settlement Agreement did not allow interest payments during the GAP Period.

The bankruptcy court did not rely on the Arbitration Award in making its decision; indeed, the court stated that it did not examine the award before forming its tentative conclusions. Instead, the court was observing that its findings were consistent with the extensive findings of the arbitration panel considering the same issue.

-13-

Finding of Fact 16.

> In light of the ruling not allowing interest during the Gap Period, and taking into account the payments the Debtors have already made, the Debtors paid their obligations in full under the Settlement Agreement and have no obligation to make any further payments into the Court Registry.

Finding of Fact 18.

Based on these findings and conclusions, on September 26, 2011, the court entered the Partial Summary Judgment in the Interpleader Adversary Proceeding. The court withheld final summary judgment because there was an open question whether AWI may have overpaid funds into the Court Registry. The court certified its Partial Summary Judgment as final under Civil Rule 54(b) as to all matters in the adversary proceeding except the question of overpaid funds.

Racusin filed a timely appeal of the Partial Summary Judgment on October 7, 2011.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A) and (O). The Panel has jurisdiction under 28 U.S.C. §§ 158(a)(3) and (b).

## III. ISSUE

Whether the bankruptcy court erred in its interpretation of the Settlement Agreement that Racusin is not entitled to interest on the Racusin Claim during the Gap Period.

## IV. STANDARDS OF REVIEW

Under Nevada law, a court's interpretation of a contract is reviewed de novo. Dobron v. Brunch, 215 P.3d 35, 37 (Nev. 2009). The appellate courts will upset an essentially factual

-14-

determination made by a trial court in the course of interpretation of a contract if, and only if, it is clearly erroneous. Ah Moo v. A.G. Becker Paribas, Inc., 857 F.2d 615, 621 (9th Cir. 1988).

A bankruptcy court's decision to grant partial summary judgment is reviewed de novo. White v. City of Sparks, 500 F.3d 953, 955 (9th Cir. 2007); Guerin v. Winston Industries, Inc., 316 F.3d 879, 882 (9th Cir. 2002).

## V. DISCUSSION

As can be seen from the recitation of the facts, this is the latest contest between Racusin and AWI stemming from litigation in the district and bankruptcy courts, and a long string of appeals to this Panel and the Ninth Circuit. This appeal challenges the bankruptcy court's interpretation of the Settlement Agreement and, in particular, its interpretation of a critical term in that agreement, the "BAP Appeal." Indeed, as counsel for Racusin conceded at oral argument before the Panel, if the bankruptcy court's interpretation of the term "BAP Appeal" was correct, then his entry of partial summary judgment was correct.

Under Nevada law, a settlement agreement is a contract and general rules of contract interpretation apply to the construction of the terms used in the parties' Settlement Agreement. Jones v. Suntrust Mortg., Inc., 274 P.3d 762, 764 (Nev. 2012); Kahn v. Dodds (In re AMERCO Derivative Litig.), 252 P.3d 681, 693 (Nev. 2011) ("Because settlement agreements are contracts, they are governed by principles of contract law. Under contract law generally, when a [provision] is unambiguous, we must construe it from the language contained within it."); Ringle v. Burton,

-15-

86 P.3d 1032, 1039 (Nev. 2004) ("[W]hen a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written."); Musser v. Bank of Am., 964 P.2d 51, 54 (Nev. 1998) ("A basic rule of contract interpretation is that every word must be given full effect if at all possible.").

When the parties to a contract "foresee a condition which may develop and provide in their contract a remedy for the happening of that condition, the presumption is that the parties intended the prescribed remedy as the sole remedy for that condition." Gilman v. Gilman, 956 P.2d 761, 767 (Nev. 1998).

In this case, the terms of the Settlement Agreement anticipated four conditions that might develop after the agreement was entered and prescribed the form of compensation that Racusin could recover from AWI as a result of the two pending appeals. As the parties understood the circumstances: (1) Racusin could lose the Ninth Circuit Interest Appeal and also lose the BAP Appeal; (2) he could lose the Ninth Circuit Interest Appeal and win the BAP Appeal; (3) he could win the Ninth Circuit Interest Appeal but lose the BAP appeal; or (4) he could win the Ninth Circuit Interest Appeal and also win the BAP Appeal. Of these conditional provisions, the first two are not relevant because it is undisputed that Racusin won the Ninth Circuit Interest Appeal. It is only the two provisions that anticipated Racusin's eventual victory in the Ninth Circuit Interest Appeal that are implicated. Under those provisions, if Racusin also won the BAP Appeal, he would be compensated according to § III(7) of the Settlement Agreement, which required a cash payment be made to him by AWI.

-16-

However, if Racusin lost the BAP Appeal, his right to compensation was to take the form of stock, as provided in § III(8). Therefore, the only factual question requiring resolution under the Settlement Agreement's scheme for compensating Racusin was whether he won or lost the BAP Appeal. To determine the answer to this question, the bankruptcy court was required to decide whether the term "BAP Appeal" as used in the Settlement Agreement was a reference solely to the anticipated decision of the BAP, which Racusin lost, or whether that term would also apply to the outcome of his possible appeal of the BAP decision to the Ninth Circuit, where Racusin prevailed.

In the Partial Summary Judgment, the order on appeal, the bankruptcy court decided that the term "BAP Appeal" as used in the Settlement Agreement was plain, and that it referred only to the decision of the BAP, and not to any appeal of the BAP's decision:

> I have read the settlement agreement. "BAP Appeal" refers only to the appeal to the BAP and not to any subsequent appeal. And that is my finding of an undisputed fact as of this time. . . . And it can be the — so far as I can determine, the only possible interpretation based upon various provisions in the settlement agreement.

Hr'g Tr. 10:20-21, July 27, 2011.

The bankruptcy court's ruling that "BAP Appeal" has but <u>one</u> possible meaning, and thus is unambiguous and plain, is supported by the record.

First of all, "BAP Appeal" is a defined term in the Settlement Agreement: "[AWI] has appealed an adverse decision of the Bankruptcy Court in the Bankruptcy Appellate Panel (the "BAP

-17-

Appeal").[7]  Settlement Agreement, 4th WHEREAS clause, ¶ 2. Thereafter, every time the Settlement Agreement refers to "BAP Appeal," the reference is to the anticipated decision by the BAP. In contrast, whenever the Settlement Agreement refers to appeals other than the defined appeals, the Settlement Agreement employs a lower case "a" to refer to the other appeals, thus distinguishing them from the defined appeals.

The Settlement Agreement also refers to "pending the outcome of the [BAP Appeal]."  Settlement Agreement § 6.  According to the dictionaries, the plain meaning of "pending" is "not yet decided." Random House Dictionary (2011); Merriam-Webster Collegiate Dictionary (2004); Webster's Third New International Dictionary (1981).  Use of the term "pending" in this context can only refer to the defined BAP Appeal; some later appeal, such as a not-yet-existing appeal to the Ninth Circuit from the decision in the BAP Appeal, cannot fairly be described as "not yet decided."

Racusin cites § III(4) to support his proposition that the Settlement Agreement contemplated the possibility of an appeal of the BAP's decision to the Ninth Circuit.  He infers that this provision therefore melds the Ninth Circuit Subordination Judgment with the BAP Appeal.  However, a close reading of the text of that provision reveals that the Settlement Agreement carefully distinguished by its terminology a possible Racusin appeal of the decision to the Ninth Circuit from the decision in the "BAP

---

[7] Other defined appeals in the Settlement Agreement are: the 9th Circuit Appeal, Settlement Agreement § 1 (which we refer to in this memorandum as the Ninth Circuit Interest Appeal to avoid confusion) and the Hartunian Appeals, which were various appeals of disputes between Racusin and one of his counsel, Hartunian.

-18-

Appeal": "[AWI agrees] that it would not appeal the decision in the BAP Appeal and will accept the BAP Appeal decision as final; Racusin shall retain the right to appeal the decision in the BAP Appeal."

We agree with the bankruptcy court that, by assigning its plain meaning, the term "BAP Appeal" as used by the parties in their Settlement Agreement refers only to the decision of the BAP, and not to any subsequent Racusin appeal from that decision. In other words, the four conditional provisions in the Settlement Agreement were inserted by the parties with the intent that they operate only as the result of the outcomes of the Ninth Circuit Interest Appeal and the BAP Appeal, and not to control if there were further appeals of the BAP Appeal to the Ninth Circuit.

Having decided that BAP Appeal refers solely to the decision in the pending BAP appeal, and by applying Nevada law on contract construction, it follows that § III(8) of the Settlement Agreement, and not § III(7), provides Racusin's sole remedy in the event he won the Ninth Circuit Interest Appeal, but lost the BAP Appeal. Section III(8) specifies that, given that outcome of the appeals, Racusin is entitled to 250,000 shares of AWI stock, not any cash payments with or without interest.[8] It also then follows that when AWI interpleaded the 250,000 shares of stock with the clerk, AWI's obligations under the Settlement Agreement were satisfied in full. As the bankruptcy court correctly determined, the law of interpleader arrests the accrual of any interest on the

---

[8] That the 250,000 shares were later replaced with cash under the terms of the Interpleader Order does not change the non-interest bearing nature of the deposit during the Gap Period.

AWI obligation during the Gap Period. <u>Transaero Land & Dev. Co.</u> <u>v. Land Title of Nev., Inc</u>., 842 P.2d 716, 719 (Nev. 1992) (quoting Nevada's implementation of the Uniform Commercial Code, Nᴇᴠ. Rᴇᴠ. Sᴛᴀᴛ. §104.3603(3)(2012) ("If tender of payment of an account due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged")); 22 <u>Williston on Contracts</u> § 60:80 (4th ed. 2002) ("A proper tender of payment discharges the obligation of the obligor to pay interest after the due date on the amount tendered."); <u>see also</u> <u>Nichols v. Unum Life Ins. Co. of Am.</u>, 287 F.Supp.2d 1088, 1091 (N.D. Cal. 2003)("the interpleading party bears no liability for interest on the interpleaded fund after the date that he pays the interpleaded fund into the court").

It should also be noted that the bankruptcy court was fully aware of and intended the legal consequences of approving interpleading the stock. As the court commented at the hearing approving the Interpleader Order: "The debtor is protected from the claims by doing what it is supposed to do, deposit in the interpleader what is required by the final BAP decision." Hr'g Tr. 33:3-5, July 27, 2005.

Racusin has argued that the bankruptcy court in the Interpleader Order ruled that interest would accrue during the GAP period if the Ninth Circuit reversed the BAP. We repeat here Racusin's argument:

> In fact, the Bankruptcy Court was well aware of the parties Settlement Agreement, and while allowing the Debtors to deposit the stock, Judge Goldwater had the following language added to the [Interpleader Order]:

> [I]n the event the BAP order is reversed on appeal, the stock shall be withdrawn and substituted with cash pursuant to the amortization schedule set forth in the Settlement Agreement and the Confirmed Plan.
>
> Indeed, the Bankruptcy Court stated at the hearing that Racusin would be entitled to the "accumulated amortization."

Racusin's Op. Br. at 20 (internal citations omitted). However, there are both technical and legal deficiencies in Racusin's argument.

First, contrary to Racusin's implication that Judge Goldwater intentionally modified the order to add the quoted language, that language was the subject of an extended colloquy among the parties and the court, and the specific language was agreed to by the parties and the court at the hearing on the Interpleader Order. Hr'g Tr. 33:11–34:11. It was corrected in the final order by a handwritten interlineation.

Second, by beginning his quotation of the order with the bracketed "[I]n", Racusin omits the critical introductory phrase, "subject to further order of the court." That the parties and court intended this phrase to apply to the part of the order regarding the effect of reversal of the BAP Subordination Order is apparent from the specific language agreed to in the hearing on the Interpleader Motion:

> SMITH [Racusin's Attorney]: So what I'm putting in is:
>
> > Subject to further order of the court that in the event the BAP order is reversed on appeal the stock shall be withdrawn and substituted with cash . . . .

Hr'g Tr. 33: 11-14.

> SMITH:   . . .Pursuant to the amortization schedule set

-21-

forth . . . in the settlement agreement.

_Id_. at 34:9-11. Those are the precise words that appear in the Interpleader Order at 2 (both typed and with the handwritten interlineation).

And third, contrary to Racusin's assertion, the bankruptcy court never stated at the hearing or elsewhere that Racusin was "entitled to the 'accumulated amortization.'"

Besides these technical mistakes in its contention, Racusin's argument, that the bankruptcy judge's order required that interest would accrue during the GAP period if the Ninth Circuit reversed the BAP, lacks legal merit. Even if the judge's ruling could be interpreted that way, which we question, it was, by its terms and legally, an interlocutory order. A court may review or reconsider its interlocutory orders at any time. _Noel v. Hall_, 568 F.3d 743, 748 n.6 (9th Cir. 2009). Further evidencing that this was an interlocutory order, the court's order was made expressly "subject to further order of the court." That the "further order of the court" was entered by a successor bankruptcy judge in the case is of no moment. _Fairbank v. Wunderman Cato Johnson_, 212 F.3d 528, 530 (9th Cir. 2000) (holding that a successor judge has discretionary authority to review earlier interlocutory rulings because a "second judge must conscientiously carry out his judicial function in a case over which he is presiding").

In short, Racusin's argument is not persuasive. The language in the Interpleader Order was an interlocutory attempt to anticipate the possible consequences of future events. By its terms, the court and parties agreed that it would be subject to

further review of the court.[9]  While the order was entered by Judge Goldwater, as the successor judge, Judge Zive was not constrained by the Interpleader Order.

Finally, once it concluded that § III(8) of the Settlement Agreement controlled, the bankruptcy court correctly ruled that AWI's obligation to Racusin under the Settlement Agreement was fixed at 250,000 shares of stock, and the tender of those shares in the interpleader action fully satisfied AWI's obligation to Racusin.  There remained at that point no further disputed issues of material fact preventing entry of a partial summary judgment in favor of AWI in the Interpleader Action, determining Racusin's rights under the Settlement Agreement.[10]

## VI. CONCLUSION

The bankruptcy court did not err in its interpretation of the Settlement Agreement, or in its decision to grant partial summary judgment in favor of AWI against Racusin.  We AFFIRM that partial summary judgment.

---

[9]  The bankruptcy court also ruled that equitable considerations prevented an award of interest to Racusin during the GAP Period.  Because we will affirm the bankruptcy court's decision on legal grounds, the Panel does not reach the question of the equitable grounds.

[10]  Of course, the parties acknowledge that AWI's claim that it overpaid into the interpleader remains to be resolved in the bankruptcy court.

-23-